UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE W. SYMONDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:19-cv-01375 WBS CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the undersigned Magistrate Judge will recommend that plaintiff's motion for remand be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1959, applied on October 25, 2016 for SSI, alleging disability beginning July 21, 2015. Administrative Transcript ("AT") 16, 24. Plaintiff alleged he was unable to work due to arthritis, high blood pressure, diabetes, lower back problems, and mental issues. AT 257.

////

////

In a decision dated August 24, 2018, the ALJ determined that plaintiff was not disabled.[1]  AT 16-26.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since October 25, 2016, the application date.
>
> 2. The claimant has the following severe impairments: lower back pain with intermittent radiculopathy in the lower extremities, left cubital tunnel syndrome, diabetes, hypertension, and obesity.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, except he can occasionally climb stairs but never

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, kneel or crouch, but never crawl.  He can never work around hazards, such as moving dangerous machinery or unprotected heights.  He can frequently, but not constantly, use his left non-dominant upper extremity for handling and fingering.

5.  The claimant is unable to perform any past relevant work.

6.  The claimant was born on XX/XX/1959 and was 57 years old, which is defined as an individual of advanced age, on the date the application was filed.

7.  The claimant has a limited education and is able to communicate in English.

8.  The claimant has acquired work skills from past relevant work.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

10.  The claimant has not been under a disability, as defined in the Social Security Act, since October 25, 2016, the date the application was filed.

AT 19-26.

Plaintiff notes that the claim that is the subject of this appeal is a subsequent application. (ECF No. 11 at 2.) Plaintiff filed a Title II and Title XVI application on February 12, 2013.  See AT 96.  Plaintiff's prior claim was denied by an ALJ, and then by the Appeals Council. AT 93-112, 141-144.  In the written decision under review here, the ALJ stated:

> [T]he claimant has a prior unfavorable decision issued by [another ALJ] on July 20, 2015.  First, as discussed below, the objective medical evidence indicates that the claimant has had an increase in the severity of his physical impairments and suffers from severe physical impairments not previously considered in the hearing decision dated July 20, 2015; therefore, the presumption of continuing nondisability does not apply.  Second, the claimant has presented new and material evidence relating to the finding of disability; as such, the undersigned does not have to give effect[] to the [earlier] findings.  The new material evidence includes, but is not limited to, hearing testimony and a physical and psychological consultative examination.  Accordingly, the claimant has rebutted the presumption of continued nondisability, the undersigned has not adopted the prior findings, and the undersigned has made new findings based on all the evidence pertinent to this decision.

AT 21 (record citations omitted).

////

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in weighing the medical opinion evidence; (2) the ALJ failed to adequately develop the record; and (3) the ALJ erred in discounting plaintiff's credibility.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

////

ANALYSIS

    A. Medical Opinion

Plaintiff asserts that the ALJ erred in weighing the 2017 opinion of examining physician Dr. Satish Sharma.

Dr. Sharma, an internal medicine physician, first examined plaintiff on June 26, 2013 in relation to his prior application for disability benefits.[2] AT 104. At that time, Dr. Sharma opined that the claimant could lift 25 pounds frequently and 50 pounds occasionally; could sit, stand, and walk 6 hours in an 8-hour workday; and could occasionally stoop and bend. AT 104. The prior ALJ gave significant weight to Dr. Sharma's opinion in ruling that plaintiff could perform medium work and was not disabled. AT 104.

Dr. Sharma examined plaintiff again on January 12, 2017 with respect to the disability claim now before the court. AT 338-342. She diagnosed him with "low back pain with intermittent radiculopathy in the lower extremities" and left cubital tunnel syndrome[3], among other conditions. AT 341. Dr. Sharma's second assessment was more restrictive than the first, as she opined that plaintiff could lift 10 pounds frequently and 20 pounds occasionally; could sit, stand, and walk 6 hours in an 8-hour workday; could occasionally bend and stoop; and was limited to frequently holding, fingering, and feeling with his left hand. AT 341.

Reviewing Dr. Sharma's 2017 opinion, the ALJ wrote:

> [T]he undersigned assigns little weight to the opinion of consultative examiner, Satish Sharma, M.D. Dr. Sharma opined the claimant can perform work at the light exertional level with postural and manipulative limitations. Dr. Sharma had an opportunity to examine the claimant, which positions her well to provide an opinion on the claimant's abilities. However, her opinion is generally inconsistent with the record as a whole. Most notably, as discussed above, the

---

[2] As Dr. Sharma's 2013 report is not in the administrative record of this action, citations are to the prior ALJ's decision summarizing her findings.

[3] Cubital Tunnel Syndrome is a condition that involves pressure or stretching of the ulnar nerve (also known as the "funny bone" nerve), which can cause numbness or tingling in the ring and small fingers, pain in the forearm, and/or weakness in the hand. Source: American Society for Surgery of the Hand, *available at* https://www.assh.org/handcare/condition/cubital-tunnel-syndrome (last visited May 5, 2020).

5

> claimant does not receive treatment by way of medication or any other method for his back and left arm pain.[4] Furthermore, there is no indication of radiculopathy as the claimant denied feelings of 'tingling' in any extremities, and, during the examination, he had intact deep tendon reflexes, normal gait, and normal muscle strength in his lower extremities.[5] Accordingly, the undersigned assigns little weight to Dr. Sharma's opinion.

AT 23, citing AT 338-344. The ALJ continued:

> The undersigned notes that [plaintiff's counsel] Attorney Boudov argued at the hearing that the undersigned should adopt Dr. Sharma's opined limitations. The undersigned considered this argument; however, as discussed above, Dr. Sharma's opinion is generally inconsistent with and not supported by the record as a whole. Furthermore, the undersigned left the record open for Attorney Boudov to submit outstanding medical records that would advance his position. No new medical records were submitted. Based on the above medical evidence, which includes little treatment and no diagnostic imaging, the undersigned, as discussed above, assigns little weight to Dr. Sharma's opinion and rejects Attorney Boudov's argument.

AT 23, citing AT 60-63 (hearing testimony).

In contrast, the ALJ assigned great weight to the opinions of state agency consultants Dr. H. Jones and Dr. E. Trias, who reviewed plaintiff's records in early 2017 and opined that he could perform work at the medium exertional level with postural and manipulative limitations. AT 23, citing AT 121-122, 135-137. The ALJ found that

> [t]he consultants' opinions are generally consistent with and supported by the record as a whole. Diagnostic testing has shown positive Tinel's signs of the claimant's left elbow; however, physical examinations have been generally unremarkable. For example, as discussed above, he has normal strength in all of his extremities, he had intact deep tendon reflexes, and he had a normal gait. Furthermore, he testified that he did not have any tingling in his extremities. Accordingly, the undersigned assigns great weight to the state agency consultants.

---

[4] See AT 22 (ALJ finding that, despite complaints of lower back pain and left elbow pain, "the claimant's treatment record is minimal. The claimant's treating physician has not prescribed medication for his lower back pain or left forearm condition. He further testified he has never had surgery nor have his treating physicians recommended surgery. The record further indicates the claimant's hypertension and diabetes are uncontrolled due to a history [of] poor compliance with his treatment plan."); AT 37, 40, 41, 48 (April 23, 2018 hearing testimony).

[5] See AT 341, AT 39 (plaintiff denied tingling in extremities at April 2018 hearing).

AT 23-24, citing AT 39, 341.

The applicable regulations[6] explain that the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, the ALJ relied on the reviewing physicians' opinions and other record evidence to

---

[6] The Social Security Administration adopted new rules applicable to claims filed after March 27, 2017, which expanded the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). These revisions do not apply to plaintiff's claim, which was filed in 2016.

reject the opinion of the examining physician, Dr. Sharma.[7]  "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001), citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).  The ALJ cited plaintiff's sparse treatment history and largely unremarkable physical examination findings as evidence consistent with the state agency consultants' opinions and inconsistent with Dr. Sharma's January 2017 opinion.  The undersigned finds no error on this basis.

### B.  Duty to Develop the Record

Plaintiff next asserts that the ALJ erred by not obtaining Dr. Sharma's prior report, based on her June 26, 2013 examination of plaintiff in connection with his first application for disability benefits.  Plaintiff argues that the 2013 report "is significant and probative evidence to show how Mr. Symonds deteriorated over time."  (ECF No. 14 at 2.)

Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop the record even when claimant is represented).  Evidence raising an issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

In the claim at issue here, plaintiff alleged disability beginning on July 21, 2015.  AT 16.  It is unclear how a physical examination more than two years before the alleged onset date would

---

[7] Plaintiff cites Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007), which holds that "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  As Dr. Sharma was not a treating physician, and the state agency consultants were not examining physicians, this holding does not apply here.

have a material impact on the disability decision.  See, e.g., Baker v. Berryhill, 720 Fed. Appx. 352, 355 (9th Cir. 2017) (unpublished) ("The ALJ did not err by not discussing evidence from three psychologists who evaluated Baker prior to her alleged onset date, as ALJs are not required to discuss evidence 'that is neither significant nor probative,' Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), and medical opinions predating the alleged onset date 'are of limited relevance,' Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008)").  As noted above, the ALJ found that plaintiff "presented new and material evidence relating to the finding of disability" and rebutted the presumption of continued nondisability, and "the undersigned has made new findings based on all evidence pertinent to this decision."  AT 21.

Notably, plaintiff had the opportunity to submit any additional probative medical records, but did not supplement the record when given the chance.  At the April 23, 2018 hearing, the ALJ gave plaintiff extra time to submit "any other record of any type" that he wished to submit.  AT 34, 63 ("I've given your attorney more time for any other records he might want to send in.").  In his August 24, 2018 decision, the ALJ noted: "[T]he undersigned left the record open for [plaintiff's attorney] to submit outstanding medical records that would advance his position.  No new medical records were submitted."  AT 23.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ fulfilled duty to develop by keeping the record open for plaintiff to submit supplementary material).  Plaintiff has not shown error on this basis.

C. Credibility

Lastly, plaintiff asserts that the ALJ erred in finding his statements about the intensity, persistence, and limiting effects of his symptoms less than fully credible.  See AT 21-22.

The ALJ summarized plaintiff's testimony as follows:

> The claimant alleges the symptoms related to his severe impairments prevent him from being able to work on a full-time, competitive basis in the national economy.  The claimant testified that he has back pain that stems from a fall.  He testified that he cannot stand longer than two hours due to his back pain.  The claimant further testified that his left hand 'does not work' and hurts 'all the way around.'  Most notably, the fingers in his left hand go numb, which makes it difficult to grip items.  He also noted that due to his poor grip strength in his left hand, he cannot lift fifty pounds.

AT 21; see AT 35-46 (hearing testimony).

In finding plaintiff to have the residual functional capacity to perform medium work, the ALJ credited plaintiff's testimony to some degree, stating:

> To prevent any exacerbation to the claimant's back condition and due to the history of complaints of radiculopathy symptoms, the undersigned has imposed . . . postural and environmental limitations. Furthermore, given the claimant's left hand sensory loss and diminished grip strength, the undersigned has imposed . . . exertional, postural, environmental, and manipulative limitations.

AT 22; see AT 20 (medium RFC with limitations).

However, the ALJ concluded that "the medical evidence of record does not substantiate" plaintiff's position that he could not perform work at the medium level with limitations. AT 22. "Despite [plaintiff's] complaints . . . , [his] treatment record is minimal," the ALJ stated, noting that plaintiff's treating physician had not prescribed medication for his lower back pain or left forearm condition. AT 22. The ALJ further found that plaintiff's hypertension and diabetes were "uncontrolled due to a history [of] poor compliance with his treatment plan." AT 22, citing AT 290, 293, 312. The ALJ also noted plaintiff's "generally unremarkable physical exams," including "good coordination of fine motor movements of the fingers, bilaterally" and normal strength in all extremities. AT 22, citing AT 341 (Dr. Sharma's January 2017 examination findings).

"The claimant testified that his daily activities are limited," the ALJ wrote. AT 23. However, the decision continued,

> he is able to operate independently in his daily activities, including personal grooming and dressing himself, and he is able to drive. The claimant further testified that during the period at issue he has performed 'cash jobs,' such as mowing yards. Moreover, he testified that he drove to Los Angeles in the past year. Furthermore, during his psychological consultative examination in January 2017, the claimant indicated that he is able to do his own shopping, cooking, and housekeeping. These activities suggest the claimant is capable of more than he would lead one to believe.

AT 23, citing AT 35-46 (hearing testimony), 333-336 (January 2017 consultative psychological examination report).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g.,

10

Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Based on the foregoing, the undersigned concludes that the ALJ used the proper process and provided proper reasons in his credibility determination, such that the court should defer to the ALJ's discretion on this issue. The undersigned finds no error on this basis.

////

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for remand (ECF No. 11) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 20, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/symonds1375.ssi.ckd_f&rs

12